UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BEYOND 79, LLC,

                    Plaintiff,

       v.

EXPRESS GOLD CASH, INC., JUST SELL
GOLD, INC., LONDES DIGITAL
MARKETING, LLC, and OSIDIUS
DEVELOPMENT, LLC,

                    Defendants.

_____

**DECISION AND ORDER**

6:19-cv-06181 EAW

## <u>INTRODUCTION</u>

Plaintiff Beyond 79, LLC ("Plaintiff"), an online buyer of precious metals, jewelry, and diamonds, asserts claims of false advertising, unfair competition, unjust enrichment, and unfair trade practices against defendants Express Gold Cash, Inc. ("EGC"), Just Sell Gold, Inc. ("JSG"), Londes Digital Marketing, LLC ("Londes"), and Osidius Development, LLC ("Osidius") (collectively "Defendants").   (Dkt. 1).  Currently before the Court are (1) a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Londes and Osidius (Dkt. 16) and (2) a motion to dismiss the Complaint pursuant to Rule 12(b)(6) filed by EGC and JSG (Dkt. 18).  For the reasons set forth below, the Court grants in part and denies in part the pending motions to dismiss.

## <u>FACTUAL BACKGROUND</u>

The following facts are taken from Plaintiff's Complaint.  As required at this stage of the proceedings, the Court treats Plaintiff's allegations as true.

Plaintiff, through various brands including SellYourGold.com, buys precious metals, jewelry, and diamonds online from across the United States.  (Dkt. 1 at ¶ 11).  Plaintiff acquired SellYourGold.com in July 2014 and has spent over $7 million advertising that website, resulting in "more than $35 million in business."  (*Id*. at ¶¶ 14-15).

Plaintiff uses social media marketing, search engine optimization advertising, and "paid advertising through the major online search engines, Google and Bing, in response to queries from potential customers looking to sell precious metals or jewelry."  (*Id*. at ¶ 12).  Plaintiff further "relies on word-of-mouth, including reviews and recommendations on the internet, to generate business."  (*Id*.).  According to Plaintiff, "online reviews and recommendations are extremely valuable" to it, and "crucial to the continued vitality and growth of [its] business."  (*Id*. at ¶ 17).

EGC and JSG are competitors with Plaintiff in "the business of buying precious metals and jewelry from the public."  (*Id*. at ¶ 18).  ECG and JSG also market themselves via online marketing techniques.  (*Id*. at ¶ 19).  However, they also "have a practice of setting up purportedly independent websites for the dual purposes of falsely establishing their own credibility and legitimacy and directing consumers who visit those websites to their own sites."  (*Id*. at ¶ 21).  In particular, Plaintiff identifies four "purportedly independent websites" that it alleges were actually created and operated by ECG "in concert with JSG": TopOnlineGoldBuyers.Com; Top10CashForGold.Com; SellYourGoldLocations.com; and GoldBuyerFinders.com.  (*Id*. at ¶¶ 22-30).  Plaintiff alleges that "EGC retained the services of Londes and Osidius to create and host its supposedly independent review and informational websites, including

Top10CashForGold.com, TopOnlineGoldBuyers.com, GoldBuyerFinders.com and SellYourGoldLocations.com." (*Id*. at ¶ 33). Osidius and Londes are "partner companies," and Londes is owned by Michael LaLonde ("LaLonde"). (*Id*. at ¶¶ 64-65).

TopOnlineGoldBuyers.com held itself out as an independent review site, but "[r]ather than post actual consumer reviews," it posted "highly suspect negative reviews about SellYourGold.com," along with "false and misleading information about SellYourGold.com that cast it in a negative light and false and misleading information about EGC and JSG that cast them in a positive light." (*Id*. at ¶¶ 24-26). TopOnlineGoldBuyers.com is registered to Osidius and "GoDaddy.com's whois lookup indicates that the registrant's name is Michael LaLonde." (*Id*. at ¶¶ 62-63). "TopOnlineGoldBuyers.com displayed a 'star rating' for each company it listed," which it falsely claimed was based on reviews by actual customers. (*Id*. at ¶¶ 69-70). This website also removed positive customer reviews about SellYourGold.com. (*Id*. at ¶ 71). Plaintiff sent a cease and desist letter to Londes "in response to the fake online reviews on TopOnlineGoldBuyers.com," and "Londes was persuaded to remove TopOnlineGoldBuyers.com from the Internet as a result." (*Id*. at ¶¶ 74, 76). Shortly after Plaintiff sent its cease and desist letter to Londes, it "received a similar letter from counsel to EGC alleging Lanham Act violations by" Plaintiff. (*Id*. at ¶ 78).

Plaintiff identifies several specific false statements about SellYourGold.com that were displayed on TopOnlineGoldBuyers.com: (1) untrue statements regarding the length of time SellYourGold.com had been in operation; (2) untrue statements about SellYourGold.Com's Better Business Bureau rating; (3) untrue statements about the dollar

amount up to which SellYourGold.com insured statements; and (4) a false attribution of a check issued by GoldKit.com to SellYourGold.Com.  (*Id*. at ¶¶ 81-92).  Plaintiff further alleges upon information and belief that EGC, "acting as TopOnlineGoldBuyers.com, purchased Google AdWords advertising meant to be displayed when consumers searched for terms similar to 'sell your gold' on Google which read 'SellYourGold Reviews & Scams – Consumer Reviews: 1.2/5 Stars' and used a URL of 'www.toponlinegoldbuyers.com/SellYourGold/Scams.'"  (*Id*. at ¶ 93).

Top10CashForGold.Com "purported to be a review site started by a disgruntled jewelry industry professional who was disappointed by his interaction with online gold buyers."  (*Id*. at ¶ 27).  However, the stated backstory of this disgruntled jewelry industry profession, "Jeffrey Johnson," is "completely implausible"—"there is no one named Jeffrey Johnson, who resembles the person pictured on Top10CashForGold.com and who worked in the jewelry industry for 32 years. . . ."  (*Id*. at ¶ 45).  The photograph of "Jeffrey Johnson" on Top10CashForGold.com is a stock photograph.  (*Id*. at ¶ 46).  Further, the "html code" used to create Top10CashForGold.com and increase its search engine optimization evidences its affiliation with EGC.  (*Id*. at ¶ 48).  In particular, "[t]he code for Top10CashForGold.com contained nine hidden links to various EGC webpages but contain[ed] no similar links for any other gold buying companies."  (*Id*. at ¶ 52).  In addition, "[a]s of October 22, 2016 the code for Top10CashForGold.com contained a portion identified as 'Google Code for ExpressCashGold.com Remarketing List.'"  (*Id*. at ¶54).  Top10CashForGold.com "effusively recommended" EGC's services and made "false claims and statements about EGC without revealing any connection to EGC."  (*Id*.

- 4 -

at ¶ 28).   Specifically, Top10CashForGold stated that EGC's "price is . . . always the best on the net" and ranked EGC as its top online gold buyer and JSG as second.   (*Id.* at ¶¶ 97-99).

SellYourGoldLocations.com   and   GoldBuyerFinders.com   "purport   to   be . . . independent aggregators of local storefront precious metal buyers."   (*Id.* at ¶ 32).  However, these websites extensively discuss online gold buying, "display[] EGC banner advertisings, include[] reference to EGC in all search results for local stores, and even include[] EGC's phone number as a resource to obtain more information on the price of gold. . . ."   (*Id.*). All search results on SellYourGoldLocations.com and GoldBuyerFinders.com "include text recommending that customers sell online, and list[] EGC as the only online gold buyer."   (*Id.* at   ¶¶ 116-17).   These websites claim that EGC "has been ranked as a top online gold buyer in several independently executed tests" and "highly recommend [that consumers] talk to [EGC] before selling [their] gold jewelry elsewhere."   (*Id.* at ¶¶ 118, 120   (original   alteration   omitted)).   LaLonde   is   the   registered   owner   of GoldBuyerFinders.com.   (*Id.* at ¶ 103).   SellYourGoldLocations.com is registered to Osidius, and LaLonde is the registrant.   (*Id.* at ¶ 111).

Since "at least September 2014," EGC has displayed graphics and text on its website claiming that it is "Independently Ranked # 1."   (*Id.* at ¶¶ 34-35).   These claims were expressly   identified   as   based   on   reviews   from   Top10CashForGold.com,   and TopOnlineGoldBuyers.com, "each of which listed EGC first among ranked online gold buyers."   (*Id.* at ¶¶ 37-38).

Based on these allegations, Plaintiff asserts 11 claims against Defendants: (1) two claims for false advertising under the Lanham Act, 15 U.S.C. § 1125(a) (First and Sixth Claims); (2) two claims of false advertising under New York General Business Law § 349 (Second and Seventh Claims); (3) two claims of false advertising under New York General Business Law § 350 (Third and Eighth Claims); (4) two claims of common law unfair competition (Fourth and Ninth Claims); (5) two claims of unjust enrichment (Fifth and Tenth Claims); and (6) one claim for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Eleventh Claim).  (*Id.* at ¶¶ 125-239).

## PROCEDURAL BACKGROUND

Plaintiff commenced the instant action on March 11, 2019.  (Dkt. 1).  Defendants filed the pending motions to dismiss on May 31, 2019.  (Dkt. 16; Dkt. 18).  Plaintiff filed its responses on July 26, 2019 (Dkt. 22; Dkt. 23), and Defendants filed their replies on August 16, 2019 (Dkt. 26; Dkt. 28).

## DISCUSSION

### I.   Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017).

To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II.   **Londes' and Osidius' Motion to Dismiss**

Londes and Osidius seek dismissal of all of Plaintiff's claims against them, arguing that:  (1) Plaintiff's Lanham Act false advertising claims are based on statements that are mere puffery; (2) enhancing the visibility of an entity in a search is not false advertising; (3) Plaintiff has failed to plausibly allege that it suffered an injury caused by either Londes or Osidius; (4) Plaintiff has failed to allege consumer injury as required under the New York General Business Law; (5) Plaintiff has not plausibly alleged a common law unfair competition claim because it does not allege that Londes or Osidius are its competitors or

that Londes or Osidius misappropriated any of Plaintiff's labor, skill, or money, nor has it alleged special damages as required to support a claim of product disparagement unfair competition; (6) Plaintiff cannot maintain a claim under FDUTPA because it is not a consumer, has not alleged consumer harm, and has not alleged deceptive conduct occurring in Florida; (7) Plaintiff has not alleged any action taken or benefit received by Londes and Osidius as required to support a claim for unjust enrichment; (8) Plaintiff's unjust enrichment claims should be dismissed as duplicative; and (9) Plaintiff's claims are barred in part by the applicable statute of limitations. (Dkt. 17). Londes and Osidius also make a threshold argument that the allegations against them are insufficiently detailed to state any cause of action. (*Id*. at 8).

### A.   Plaintiff's Allegations against Londes and Osidius are Sufficiently Specific

Londes and Osidius make a general argument that they have been improperly "lump[ed]" together with EGC and JSG in the Complaint, and that the allegations against them are thus too "bare and conclusory" to state any plausible cause of action. (Dkt. 17 at 8). The Court disagrees. It is true that "where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish between the conduct of each of the defendants." *Ritchie v. N. Leasing Sys., Inc*., 14 F. Supp. 3d 229, 235 (S.D.N.Y. 2014). However, in this case, the Complaint makes Londes' and Osidius' purported role in the false and deceptive advertising scheme clear: Londes and Osidius were hired by EGC to register, create, and maintain the deceptive websites at issue. (*See* Dkt. 1 at ¶¶ 33, 62-64, 103, 110-11).

The Court is unpersuaded by Londes' and Osidius' argument that Plaintiff's "allegations that the defendants acted jointly or in concert are simply not sufficient to state a plausible claim for relief as against Londes and Osidius." (Dkt. 17 at 8). Plaintiff's allegations as to Londes and Osidius are not merely that they acted in concert with EGC— instead, their particular role in the alleged scheme has been identified. These allegations are sufficiently detailed to render plausible the claim that these entities actively participated in the deceptive advertising campaign detailed in the Complaint.

The Court finds instructive to its analysis the "handful" of district court cases that have considered "the liability of advertising and public relations agencies for Lanham Act false advertising violations." *Nestle Purina PetCare Co. v. Blue Buffalo Co*., No. 4:14 CV 859 RWS, 2015 WL 1782661, at *5 (E.D. Mo. Apr. 20, 2015). The courts that have considered the issue have uniformly "held that advertising agencies may be liable under the Lanham Act." *Id.* (collecting cases). While Londes and Osidius are not advertising agencies, they, like the advertising agencies at issue in those cases, are alleged to have "knowingly participated in the creation, development, and propagation of the false advertising campaign," and can accordingly be held liable as joint tortfeasors. *In re Century 21-RE/MAX Real Estate Advert. Claims Litig*., 882 F. Supp. 915, 925 (C.D. Cal. 1994) (alteration omitted and quoting *Gillette Co. v. Wilkinson Sword, Inc.*, 795 F. Supp. 662, 664 (S.D.N.Y. 1992)). The Court will not dismiss the claims against Londes and Osidius on the basis that their role in the purported false advertising scheme has been described with insufficient particularity.

B. **Lanham Act Claims**

The Court turns next to Londes' and Osidius' specific arguments about the merits of Plaintiff's Lanham Act false advertising claims.  "False advertising claims based on [the Lanham Act] . . . contain two components.  First (and obviously), a plaintiff bringing a false advertising claim must show falsity."  *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 63 (2d Cir. 2016).   "To prevail on a false-advertising claim under . . . the Lanham Act, 'a plaintiff must show that either: 1) the challenged advertisement is literally false, or 2) while the advertisement is literally true it is nevertheless likely to mislead or confuse consumers.'"  *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 637 (S.D.N.Y. 2016) (quoting *Johnson & Johnson Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir. 1992)).

"The first type of claim, one for literal falsity, clearly captures falsehoods that are explicitly stated, *i.e.*, any representation that is false on its face.  Importantly, however, literal falsity may also be proved by implication."  *Chobani, LLC v. Dannon Co., Inc.*, 157 F. Supp. 3d 190, 199 (N.D.N.Y. 2016) (quotations and citations omitted).   An advertisement is false by necessary implication if, "considering the advertisement in its full context, the relevant audience would recognize the false implied claim as easily as if it had been stated explicitly."  *Pamlab, L.L.C. v. Macoven Pharm., LLC*, 881 F. Supp. 2d 470, 476 (S.D.N.Y. 2012).

"Alternatively, a plaintiff can show that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers."  *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007).  In order to succeed on this type of

claim, a plaintiff must show that the challenged "statement, whatever its literal truth, has left an impression on the listener or viewer that conflicts with reality—a claim that invites a comparison of the impression, rather than the statement, with the truth." *Id.* (quotation and alteration omitted).

"Falsity alone does not make a false advertising claim viable." *Apotex*, 823 F.3d at 63. Instead, once falsity has been established, "the plaintiff must also demonstrate that the false or misleading representation involved an inherent or material quality of the product." *Id.* (quotation omitted). This requirement is "essentially one of materiality," and means that the misrepresentation must have been "likely to influence purchasing decisions." *Id.* (quotations omitted).

Londes and Osidius argue that in its Sixth Claim, Plaintiff "describes statements that are nothing more than puffery." (Dkt. 17 at 9). The Second Circuit has recognized two kinds of puffery in the context of false advertising claims: "a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion"; and "an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying." *Time Warner Cable*, 497 F. 3d at 159 (quotations omitted). Plaintiff's Sixth Claim falls into neither of these categories. Instead, it specifically alleges that Defendants falsely represented the websites at issue as independent review sites when they were in actuality associated with EGC. (*See* Dkt. 1 at ¶¶ 183-87). In other words, it is not the statement that EGC is "the best online precious metal buyer"—which is the kind of the statement that has been found

to be puffery—that is alleged to be false; it is the representation that this conclusion was reached in an independent manner.

Londes' and Osidius' argument that it cannot be held liable for the high rankings of EGC and JSG found on the websites at issue because "[e]nhancing the visibility of an entity in a search is simply not false advertising" (Dkt. 17 at 9) is similarly misplaced. Again, Plaintiff's Lanham Act claims are premised on the falsity of the websites' claims of independence, not merely on a claim that the websites at issue promoted EGC and JSG. *See Casper Sleep, Inc. v. Derek Hales & Halesopolis LLC*, No. 16-CV-03223 (CM), 2016 WL 6561386, at *7 (S.D.N.Y. Oct. 20, 2016) (finding actionable Lanham Act claim where mattress review site falsely claimed that its content was not "written, directed, or otherwise influenced by any manufacturer or sleep company" and that "[n]o review or content" was "paid for by any manufacturer or sleep company").

*Davis v. Avvo, Inc*., 345 F. Supp. 3d 534 (S.D.N.Y. 2018), cited by Londes and Osidius is inapposite. There, the defendant attorney rating site was not alleged to have been secretly created and maintained by competitors of the plaintiff. Instead, the gravamen of the complaint in *Davis* was that the defendant inappropriately took into account whether or not an attorney had paid in formulating its ratings. *Id*. at 541. The *Davis* court held that because the ratings were merely the defendant's opinion, they could not be proven false and were "therefore protected under the First Amendment and the New York State Constitution as statements of opinion." *Id*. By contrast, in this case the alleged deception is not the high ratings given to EGC and JSG, but instead the false representation that those

ratings were derived independently or from real customer reviews, when in actuality they were formulated and published by EGC itself, acting through Londes and Osidius.

Londes' and Osidius' further argument that Plaintiff has "failed to sufficiently allege that it suffered an injury caused by Londes or Osidius" (Dkt. 17 at 10) is also unavailing. Plaintiff has alleged that EGC's false advertising campaign, in which Londes and Osidius are claimed to have actively participated, has diverted customers and cost it revenues of "no less than $6 million." (Dkt. 1 at ¶ 195). This is not, as Londes and Osidius suggest, a "formulaic recitation." (Dkt. 17 at 10). "[I]n pleading a false advertising claim under the Lanham Act, the plaintiff need not provide evidence of actual loss or specific evidence of causation[.]" *Davis*, 345 F. Supp. 3d at 543. At this stage of the proceedings, Plaintiff's allegation that the deceptive websites created and maintained by Londes and Osidius diverted customers who otherwise would have used Plaintiff's services is sufficient to satisfy the requirement of injury.

For all these reasons, the Court rejects Londes' and Osidius' contention that Plaintiff's Lanham Act claims against them are insufficiently pled.

### C.    General Business Law Claims

Turning to Plaintiff's claims under New York's General Business Law, Londes and Osidius argue that these claims must be dismissed because Plaintiff has not plausibly alleged consumer harm. The Court agrees, for the reasons set forth below.

"To state a cause of action under [General Business Law] § 349, a plaintiff must allege (1) a deceptive consumer-oriented act or practice which is misleading in a material respect, and (2) injury resulting from such act." *Exxonmobil Inter-Am., Inc. v. Advanced*

*Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 447 (S.D.N.Y. 2004).  "[C]orporate competitors" may bring a claim under General Business Law § 349 "so long as some harm to the public at large is at issue."  *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) (citation omitted).

The Complaint in this case is devoid of any allegations of injury to the public at large.  Plaintiff argues that it is sufficient that the Complaint alleges "misleading and false statements made on consumer-facing websites, the purpose of which is to confuse and mislead consumers into selecting EGC or SYG over SellYourGold.com."  (Dkt. 22 at 11).  However, "[f]or nearly three decades, the overwhelming majority of—if not all—federal courts to address the question . . . have recognized that the injury to consumers or the public interest in a Section 349 case must be more than the general variety of consumer confusion that is the gravamen of such a claim."  *Mayes v. Summit Entm't Corp.*, 287 F. Supp. 3d 200, 208 (E.D.N.Y. 2018) (quotation and original alteration omitted).[1]  Accordingly, "to survive a motion to dismiss [a plaintiff] need[s] to allege harm to consumers beyond mere confusion."  *Id.* at 209.  No such allegation is present in this case—Plaintiff does not allege that EGC and JSG paid consumers less for their precious metals and jewelry than they were worth or than SellYourGold.Com would have paid, or that consumers otherwise received an inferior service or product.  The Complaint thus does not plausibly allege a claim under

---

[1]      As the *Mayes* court explained in its thorough and well-reasoned analysis of this issue, there are a scant handful of federal cases that, on their face, seem to be to the contrary. 287 F. Supp. 3d at 209.  However, a closer examination of these cases, as performed by the *Mayes* court, demonstrates that they do not "actually endorse the view that plaintiffs can bring a claim under Section 349 based on nothing more than consumer confusion."  *Id.*

General Business Law § 349.  *See, e.g., Kraus USA, Inc. v. Magarik*, No. 17-CV-6541 (ER), 2020 WL 2415670, at *19 (S.D.N.Y. May 12, 2020) (dismissing General Business Law § 349 claim where the plaintiff had "not alleged any harm to consumers beyond confusion").  Further, because "[t]he standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349," *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 330 (S.D.N.Y. 2015) (citation omitted), Plaintiff's General Business Law § 350 claims must also fail.  *See, e.g., SmileDirectClub, LLC v. Jacqueline I. Fulop, D.M.D., P.C.*, No. 19 CIV. 9582 (NRB), 2020 WL 1322838, at *4 (S.D.N.Y. Mar. 20, 2020)  (dismissing General Business Law §§ 349 and 350 claims for failure to allege consumer harm beyond confusion).

### D.   <u>Unfair Competition</u>

Turning to Plaintiff's unfair competition claim, Plaintiff clarifies in opposition to Londes' and Osidius' motion to dismiss that it "does not attempt to state a claim for misappropriation type unfair competition," but instead seeks to assert "a claim for product disparagement type unfair competition."  (Dkt. 23 at 15).  Under New York law, "[t]o recover for disparagement of goods, the plaintiff must show that the defendant published an oral, defamatory statement directed at the quality of a business's goods and must prove that the statements caused special damages."  *Fashion Boutique of Short Hills, Inc. v. Fendi USA*, Inc., 314 F.3d 48, 59 (2d Cir. 2002).  Accordingly, to state a product disparagement claim, "a plaintiff must adequately plead (1) falsity of the statement, (2) publication to a third person, (3) malice (express or implied), and (4) special damages."  *Weitsman v. Levesque*, No. 3:17-CV-00727 MAD DEP, 2018 WL 1990218, at *4 (N.D.N.Y. Apr. 25,

2018) (quotation and alteration omitted).  "Special damages are 'limited to losses having pecuniary or economic value, and must be fully and accurately stated, with sufficient particularity to identify actual losses.'"  *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 292 (S.D.N.Y. 2016) (quoting *Kirby v. Wildenstein*, 784 F. Supp. 1112, 1116 (S.D.N.Y. 1992)).

Here, the Court agrees with Londes and Osidius that Plaintiff has failed to allege special damages with the requisite specificity and that its unfair competition claims must be dismissed.  In each of its unfair competition claims, Plaintiff states that it "has been damaged in an amount to be determined at trial not less than $6 million."  (Dkt. 1 at ¶¶ 175, 225).  The New York Court of Appeals has long made it clear that "round figures, with no attempt at itemization," are insufficient to allege special damages.  *Drug Research Corp. v. Curtis Pub. Co.*, 7 N.Y.2d 435, 441 (1960); *see also Dentsply Int'l Inc. v. Dental Brands for Less LLC*, No. 15 Civ. 8775, 2016 WL 6310777, at *6 (S.D.N.Y. Oct. 27, 2016) ("[G]eneral allegations of lost sales from unidentified customers are insufficient" and "[r]ound figures or a general allegation of a dollar amount . . . will not suffice."  (internal quotation marks and citations omitted)).

Plaintiff's reliance on *eCommission Sols., LLC v. CTS Holdings, Inc.*, No. 15-CV-2671 (KBF), 2018 WL 2078816 (S.D.N.Y. May 1, 2018), *aff'd*, No. 18-1672-CV, 2019 WL 2261457 (2d Cir. May 28, 2019), is misplaced.  *eCommission* was a defamation *per se* case, *id.* at *4, and the Second Circuit has made it clear that the standards for defamation *per se* and product disparagement under New York law are different.  *See Fashion Boutique,* 314 F.3d at 60 (explaining that unlike a claim of "slander per se for which special

- 16 -

damages need not be itemized," a product disparagement claim requires "itemized damages").

E. **Unjust Enrichment Claim**

Londes and Osidius contend that Plaintiff has not plausibly alleged unjust enrichment against them, because it has not identified any action they have taken or benefit they have received at Plaintiff's expense. The Court agrees as to the second of these arguments.

"The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). "A plaintiff's allegation that a defendant received benefits, standing alone, is insufficient to establish a cause of action to recover damages for unjust enrichment." *Schatzki v. Weiser Capital Mgmt., LLC*, 995 F. Supp. 2d 251, 252 (S.D.N.Y. 2014), *aff'd sub nom. BPP Wealth, Inc. v. Weiser Capital Mgmt., LLC*, 623 F. App'x 7 (2d Cir. 2015).

In this case, the Complaint does not identify any specific, direct benefit that Londes and Osidius received in connection with its unjust enrichment claim. In opposition to Londes' and Osidius' motion to dismiss, Plaintiff argues that it is "implicit" in its allegations that Londes and Osidius were compensated for their work on the websites at issue. (Dkt. 23 at 16). However, even accepting this argument, Plaintiff offers no explanation for how that compensation was obtained at Plaintiff's expense. *See, e.g., GeigTech E. Bay LLC v. Lutron Elecs. Co*., 352 F. Supp. 3d 265, 286 (S.D.N.Y. 2018)

(dismissing unjust enrichment claim based on allegation that the defendant had "wrongfully obtained benefits" by unlawfully using the plaintiff's trade dress because there was no allegation of a direct benefit conferred on the defendant at the plaintiff's expense); *In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d 528, 532 (S.D.N.Y. 2007) (dismissing unjust enrichment claim because the use of misappropriated funds to pay operating expenses did not "confer a 'direct' and 'specific' benefit on [the defendant] at the expense of plaintiffs"). The facts as alleged by Plaintiff do not support an unjust enrichment claim against Londes or Osidius.

### F.    FDUTPA Claim

Londes and Osidius argue that Plaintiff has not stated a claim under FDUTPA because (1) it is not a consumer, (2) it has not alleged consumer harm, and (3) it has not alleged that any deceptive practice occurred in Florida. (Dkt. 17 at 13).

The Court disagrees that Plaintiff is barred from alleging a FDUTPA claim because it is not a consumer. FDUTPA "prohibits 'unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.'" *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 626 (11th Cir. 2015) (alteration omitted and quoting Fla. Stat. § 501.204(1)). To state a claim under FDUTPA, a party must allege the following elements: (1) a deceptive action or unfair trade practice; (2) causation; and (3) actual damages. *Id*. The "express purpose of FDUTPA is '[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices

in the conduct of any trade or commerce.'"  *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1296 (S.D. Fla. 2014) (quoting Fla. Stat. § 501.202(2)).

FDUTPA creates a private cause of action for "a person who has suffered a loss as a result of a violation of [the statute's provisions]."  Fla. Stat. § 501.211(2).  "The Florida Legislature, in 2001, amended § 501.211(2) by replacing the word 'consumer' with the word 'person.'"  *Carroll v. Lowes Home Centers, Inc.*, No. 12-23996-CIV, 2014 WL 1928669, at *3 (S.D. Fla. May 6, 2014).  "Florida courts have interpreted this amendment as expanding the class of plaintiffs eligible to bring claims for damages under § 501.211(2) beyond consumers."  *Sandshaker Lounge & Package Store LLC v. RKR Beverage Inc*, No. 3:17-CV-00686 MCR CJK, 2018 WL 7351689, at *6 (N.D. Fla. Sept. 27, 2018).  Accordingly, Plaintiff is not prohibited from bringing a FDUTPA claim simply because it is not a consumer.  *See Club Exploria, LLC v. Austin*, No. 6:18-CV-576 ORL DCI, 2020 WL 6585802, at *7 (M.D. Fla. Nov. 10, 2020) ("Although there was some post-amendment disagreement among courts as to whether non-consumers could bring FDUTPA claims, Florida state courts are now in general agreement that the right to bring a FDUTPA claim is not limited to consumers."); *Chiron Recovery Ctr., LLC v. AmeriHealth Hmo of New Jersey, Inc.*, No. 9:16-CV-82043, 2017 WL 4390169, at *6 (S.D. Fla. Oct. 3, 2017) ("The Court aligns itself with the line of cases finding that non-consumers have standing under FDUTPA.  Despite the existence of a split in the federal district courts, the state appellate courts that have ruled on the issue have determined that non-consumers have standing under FDUTPA."); *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1146 (M.D. Fla. 2007) ("After the amendments to the FDUTPA, courts have opined on

several occasions that actions under the statute could be sustained absent the failure to allege that FDUTPA violation arose from a consumer transaction." (quotation omitted)).

However, as the court noted in *Sandshaker Lounge*, the fact that a non-consumer may now commence an action under FDUTPA does not change the fundamental requirement that a FDUTPA claimant plausibly allege injury or detriment to a consumer. 2018 WL 7351689, at *6; *see also CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, No. 3:16-CV-186-J-34JRK, 2018 WL 905752, at *15 (M.D. Fla. Feb. 15, 2018) ("That an entity other than a consumer can bring a FDUTPA claim does not mean, however, that harm to consumers is not required." (quotation and alteration omitted)); *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. Dist. Ct. App. 2015) (explaining that after the 2001 amendments, while "the claimant *does not have to be a consumer* to bring" a FDUTPA claim, "the claimant would have to prove that *there was an injury or detriment to consumers* in order to satisfy all of the elements of a FDUTPA claim" (emphasis in original)).  Here, for reasons substantially similar to its analysis of Plaintiff's General Business Law claims, the Court finds that Plaintiff has not plausibly alleged consumer injury.

*CEMEX*  is instructive.  There, the plaintiff asserted that it had alleged harm to consumers because the scheme at issue allowed an unauthorized product distributor to hold itself out as an authorized product distributor, which "deceived, confused, and misled consumers."  2018 WL 905752, at *16.  The *CEMEX* court explained that this was insufficient to plausibly allege consumer harm sufficient to support a FDUTPA claim, because there were no "facts supporting a plausible inference that any consumers have or

are likely to have suffered damages"—no consumer was harmed by having purchased the products at issue from an unauthorized distributor. *Id*. Similarly, in this case, as the Court explained above, there is no allegation that any consumer received an unfair price for its precious metals or jewelry, or was otherwise harmed by having done business with EGC or JSG. Accordingly, Plaintiff's FDUTPA claim must be dismissed. The Court therefore need not and does not reach Londes' and Osidius' alternative argument that the conduct at issue in this case did not occur in Florida and thus cannot support a FDUTPA claim.

### G. <u>Statute of Limitations</u>

Finally, Londes and Osidius assert that the following claims are barred by the applicable statute of limitations: "All claims under GBL § 349, 350, the FDUTPA, and for unfair competition and unjust enrichment based upon allegedly misleading postings on ECG's website which began in September 2014"; "All claims under GBL § 349, 350, the FDUTPA, and for unfair competition and unjust enrichment based upon a purported customer review on TopOnlineGoldBuyers.com, which allegedly appeared on the website on August 1, 2014"; "All claims under GBL § 349, 350, the FDUTPA, and for unfair competition and unjust enrichment based upon the allegedly false statements which began in 2014 on TopOnlineGoldBuyers.com regarding the length of time Plaintiff's business was in operation and the amount of insurance Plaintiff allegedly allows for shipments"; and "any and all claims based upon the content of" GoldBuyerFinders.com and SellYourGoldLocations.com, "even claims under the Lanham Act." (Dkt. 17 at 14-15).

Having already determined, for the reasons set forth above, that Plaintiff's General Business Law, FDUTPA, unfair competition, and unjust enrichment claims are subject to

dismissal, the Court need not and does not reach the issue of whether these claims are time-barred in any part.[2]

To the extent Londes and Osidius seek dismissal of claims under the Lanham Act pursuant to the statute of limitations, they have misapprehended the law applicable to such claims. Londes and Osidius assert that "[a] false advertising claim under the Lanham Act has a six year statute of limitations" (Dkt. 17 at 14), citing *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187 (2d Cir. 1996). However, as *Conopco* makes clear, "the Lanham Act establishes no limitations period for claims alleging unfair competition or false advertising[.]" 95 F.3d at 191. Instead, the Lanham Act "expressly provides for defensive use of equitable principles, including laches." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678 n. 15 (2014) (quotation omitted); *see also Conopco,* 95 F.3d at 191 ("[L]aches is an equitable defense, employed instead of a statutory time-bar[.]"). Of course, "analogous statutes of limitation remain an important determinant in the application of a laches defense," and "determine[] which party possesses the burden of proving or rebutting the defense." *Conopco*, 95 F.3d at 191. As the *Conopco* court explained:

> When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show . . . circumstances exist which require the application of the doctrine of laches. On the other hand, when the suit is brought after the statutory time has elapsed, the burden is on the complainant to aver and prove the circumstances making it inequitable to apply laches to his case.

---

[2] Londes' and Osidius' statute of limitations arguments as to these dismissed claims require analysis of complex issues of New York law. Because Plaintiff may ultimately decide not to seek leave to replead some or all of the dismissed claims, the Court will not wade into such issues unnecessarily. The Court expects that Plaintiff will be cognizant of the applicable statute of limitations in drafting any proposed amended complaint.

*Id.* (quotation omitted).  However, "[b]ecause laches is an affirmative defense, a defendant asserting laches bears the ultimate burden of persuasion, even where a presumption of laches may apply." *Pecorino v. Vutec Corp.*, 6 F. Supp. 3d 217, 221 (E.D.N.Y. 2013).  The Second Circuit has held that for claims alleging unfair competition or false advertising under the Lanham Act, the analogous statute of limitations is New York State's six-year statute of limitations for fraud.  *Id.* at 191-92.

To prevail on a laches defense, Londes and Osidius must show that (1) Plaintiff knew of the conduct of which it complains, (2) Plaintiff inexcusably delayed in taking action against such conduct, and (3) Londes and Osidius would be prejudiced by the delay. *Rexall Sundown, Inc. v. Perrigo Co.*, 651 F. Supp. 2d 9, 31 (E.D.N.Y. 2009).  "[L]aches is an affirmative defense and is generally not available on a motion to dismiss."  *VOX Amplification Ltd. v. Meussdorffer*, 50 F. Supp. 3d 355, 364 (E.D.N.Y. 2014) (quotation omitted).   "However, in certain circumstances, when the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar, a court may consider the defense on a motion to dismiss." *Lennon v. Seaman*, 63 F. Supp. 2d 428, 439 (S.D.N.Y. 1999).

Here, Londes and Osidius have not even addressed the factors necessary to establish a laches defense, because they have instead incorrectly asserted that Plaintiff's Lanham Act claims are subject to a six-year statute of limitations.  Accordingly, the Court cannot conclude that this is the rare case in which a laches defense can be decided at the motion to dismiss stage, and will not dismiss any of Plaintiff's Lanham Act claims on this basis.

III.   **EGC's and JSG's Motion to Dismiss**

EGC and JSG seek dismissal of the Complaint in part.  Specifically, they ask the Court to dismiss: (1) all claims asserted against JSG; (2) the General Business Law Claims; and (3) the FDUTPA claim.  (Dkt. 18-2).

As to Plaintiff's General Business Law and FDUTPA claims, EGC and JSG argue, as Londes and Osidius did, that Plaintiff has failed to allege consumer harm as required to invoke these consumer protection statutes.  Plaintiff has asserted the same arguments in response to EGC and JSG on these claims as it did to Londes and Osidius, and the Court finds them unavailing for the reasons discussed at length above.  Accordingly, the Court dismisses the General Business Law and FDUTPA claims in their entirety.

Further, although EGC and JSG did not request dismissal of Plaintiff's unfair competition claims, "a district court has the power to *sua sponte* dismiss claims against nonmoving defendants for failure to state a claim, as long as the plaintiff has been given an opportunity to be heard."  *N. Am. Olive Oil Ass'n v. D'Avolio Inc.*, 457 F. Supp. 3d 207, 232 (E.D.N.Y. 2020) (citation and alteration omitted).  Here, the unfair competition claims are asserted in identical fashion against all Defendants, and Plaintiff has had ample opportunity to be heard on the issue.  Further, the Court's analysis of the special damages issue is not unique to Londes and Osidius.[3]  Under these circumstances, the Court finds it appropriate to *sua sponte* dismiss the unfair competition claims as to EGC and JSG.

---

[3]   The same is not true with respect to the benefit issue associated with Plaintiff's unjust enrichment claims, and so the Court will not *sua sponte* dismiss such claims as to EGC and JSG.

Finally, the Court agrees that the Complaint does not plausibly allege participation in the claimed deceptive advertising campaign by JSG.  Unlike Londes and Osidius, as to which there are specific factual allegations detailing their role in the scheme (namely, that EGC hired them to register and create the websites and that they in fact did so), there are no details whatsoever provided regarding JSG's role in the alleged false advertising. Instead, Plaintiff alleges in conclusory fashion that JSG acted "in concert" with EGC to create and operate the websites at issue.  (Dkt. 1 at ¶ 22).  Significantly, EGC alone is alleged to have retained Londes and Osidius (*id*. at ¶ 33), and the websites at issue are alleged only to have made minor references to JSG (*id*. at ¶ 99 (Top10CashForGold listed JSG as its second ranked online gold buyer), ¶ 106 (GoldBuyerFinders.com contained advertisements for JSG)).

Plaintiff's allegation that JSG participated in EGC's deceptive advertising scheme is purely conclusory.  *See Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (allegation that defendants had acted "in concert" was "merely conclusory").  Plaintiff has thus not plausibly alleged JSG's participation in the false advertising campaign, and the claims against it must be dismissed.

## IV.    <u>Leave to Amend</u>

Plaintiff concludes its opposition  to Londes' and Osidius' motion to dismiss with a request that it be allowed to replead in the event that the Court dismisses any of its claims. (Dkt. 23 at 18).  This "request is not a proper motion for leave to amend, and fails to comply with the Local Rules of Civil Procedure with respect to the process for seeking to amend a pleading."  *Wi3, Inc. v. Actiontec Elecs., Inc.*, 71 F. Supp. 3d 358, 363 (W.D.N.Y. 2014)

(explaining that, among other things, the Court's Local Rules require the party seeking to amend a pleading to "identify the proposed amendments through the use of a word processing red-line function or other similar markings" (quotations omitted)).   The Court therefore exercises its discretion to deny this "cursory or boilerplate request[] . . ., made solely in a memorandum in opposition to a motion to dismiss." *Malin v. XL Capital, Ltd*., 312 F. App'x 400, 402 (2d Cir. 2009).  However, the Court dismisses Plaintiff's claims without prejudice, and, as set forth below, Plaintiff may file a properly supported motion for leave to amend within 30 days of entry of this Decision and Order.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the pending motions to dismiss.  (Dkt. 16; Dkt. 18).  Specifically, the Court dismisses without prejudice: (1) all claims asserted against JSG; (2) the New York General Business Law §§ 349 and 350 claims; (3) the unfair competition claims; (4) the unjust enrichment claim against Londes and Osidius; and (5) the FDUTPA claim.   The Lanham Act claims against EGC, Londes, and Osidius and the unjust enrichment claims against EGC remain pending.  The Clerk of Court is instructed to terminate JSG as a defendant.

Plaintiff may file a motion for leave to amend within 30 days of the date of this Decision and Order, consistent with its obligations under Federal Rule of Civil Procedure 11.  In the event Plaintiff files such a motion, the Court will set a briefing schedule and any obligation on the part of the remaining Defendants to answer the Complaint will be stayed. However, in the event that no motion for leave to amend is filed, the remaining Defendants shall answer the Complaint within 45 days of the date of this Decision and Order.

- 26 -

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:  December 15, 2020
        Rochester, New York